# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| STARSTONE SPECIALTY INSURANCE COMPANY, | |
| Plaintiff, | Case No. 3:22-cv-50143 |
| v. | Honorable Iain D. Johnston |
| SP HOLDINGS INC. d/b/a SMART PRODUCTS; and KYLE BLITS, | |
| Defendants. | |
| SP HOLDINGS INC. d/b/a/ SMART PRODUCTS, | |
| Third-Party Plaintiff, | |
| v. | |
| ISU INSURANCE AND INVESTMENT GROUP, INC. and AMWINS BROKERAGE OF THE MIDWEST, LLC, KYLE BLITS, | |
| Third-Party Defendants. | |

## MEMORANDUM OPINION AND ORDER

The question before the Court is simple: did Smart Products adequately allege a claim for negligence against Amwins Brokerage of the Midwest, LLC? The answer: no. Smart Products' negligence claim is premsied on a non-existent duty. Without a duty, there can be no breach of duty. And without a breach of duty, there can be no negligence. Thus, Smart Products' negligence claim against Amwins is dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P.

12(b)(6); Dkt. 18, at ¶¶ 37–42; *see Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015).

## STATEMENT OF FACTS

Ken Hess owns Smart Products, an Indiana-based company that manufactures products used in the wooden pallet industry. Dkt. 18, at ¶¶ 1, 10. In 2004, Mr. Hess met insurance broker Tim Quakenbush. *Id.* at ¶ 10. During their "initial" meetings, Mr. Quakenbush explained that "he was experienced in the specialty field of providing insurance for manufacturers." *Id.* at ¶ 11. Mr. Quakenbush also noted that "he had experience in the subspecialty of providing insurance programs for manufacturers in the wooden pallet industry." *Id.*

Some six years later, in 2010, Mr. Quakenbush changed employment and joined ISU Insurance & Investment Group, Inc. ¶¶ 2, 12. Based on Mr. Hess' and Mr. Quakenbush's prior relationship and the "trust that had developed" between them, Smart Products "purchased policies through ISU, and relied on ISU as an adviser regarding insurance issues." *Id.* at ¶ 12. Leaving much detail to be desired, Smart Products further alleges that Amwins also "provided insurance services related to this case." *Id.* at ¶ 4.

From 2010 onward, Mr. Hess and Mr. Quakenbush "held annual meetings in advance of the renewal of Smart Products insurance policies." *Id.* at ¶ 13. At each meeting, "ISU provided advice and recommendations regarding the best insurance policies that Smart Products should purchase to protect the company from claims, including but not limited to, claims that would trigger coverage pursuant to the commercial general liability policies purchased by Smart Products through ISU." *Id.*

According to Smart Products, it has "relied" on ISU's "expertise" for the "purchase of all insurance for the company, including health, dental, vision, worker's compensation, commercial general liability and personal life insurance for owners of the company." *Id.* at ¶ 14.

Further relying on ISU's "advice and guidance," Smart Products purchased an Excess Liability Insurance Policy from StarStone Specialty Insurance Company. *Id.* at ¶¶ 5, 17. The Excess Policy provided coverage for "certain losses in excess of one million dollars," and followed Smart Products' primary policy from Kinsale Insurance Company. *Id.* at ¶¶ 5, 16. Smart Products further alleges that ISU and Amwins received brokerage fees for the sale of the Excess Policy and Primary Policy. *Id.* at ¶ 17.

In August 2018, Kyle Blits was allegedly injured while working with a machine that Smart Products manufactured. *Id.* at ¶¶ 6, 18. Mr. Blits sued Smart Products in the Circuit Court for McHenry County, Illinois. *Id.* at ¶ 6. Smart Products "provided notice of the Blits claim" to ISU and Amwins, who then allegedly provided a "claim notice to Kinsale Insurance Company" on April 2, 2019. *Id.* at ¶¶ 19–20.

## PROCEDURAL POSTURE

In May 2022, StarStone filed an Amended Complaint for Declaratory Judgment against Smart Products and Kyle Blits, seeking a declaratory judgment that its Excess Policy does not cover Mr. Blits' lawsuit because of "the timing of the notice provided by" Amwins and ISU. *Id.* at ¶ 22. According to StarStone, ISU and Amwins did not provide it with notice of the lawsuit until March 25, 2022. *Id.* at ¶ 21.

Two months later, Smart Products filed a three-count third-party complaint, naming ISU and Amwins as third-party defendants and Mr. Blits as an interested party. *Id.* at 6. Smart Products claims in Count I that ISU breached its fiduciary duty owed to Smart Products. *Id.* at ¶¶ 24–29. Smart Products claims in Count II that ISU was negligent in its conveyance of notice of Mr. Blits' lawsuit to StarStone. *Id.* at ¶¶ 30–36. Like Count II, Smart Products claims in Count III that Amwins was negligent in how it provided notice of Mr. Blits' lawsuit to StarStone. *Id.* at ¶¶ 37–42. Specifically, Smart Products asserts, in part, that: (1) Amwins "failed to notify StarStone of the Blits claim until on or about March 25, 2022," and (2), Amwins "failed to advise ISU or Smart Products that Amwins had elected not to provide notice of the Blits claim to StarStone until on or about March 25, 2022." *Id.* at ¶¶ 40(b)–(c).

Amwins now seeks to dismiss Count III of Smart Products' third-party complaint. Dkt. 35.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as prayer for the relief sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual assertions, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Reasonable inferences are drawn in favor of the plaintiff. *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The defendant, as the moving party,

4

bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). In negligence cases, the existence of a duty is a question of law that can be addressed on a motion to dismiss. *Zissu v. IH2 Property Ill., L.P.*, 157 F. Supp. 3d 797, 800 (N.D. Ill. 2016); *Quinton v. Kuffer*, 582 N.E.2d 296, 300 (Ill. App. Ct. 1991) (the existence of a duty is a question of law based upon the facts presented).

## ANALYSIS

Smart Products and Amwins' threshold dispute is whether the Court should apply Illinois or Indiana law. Dkts. 45 at 5–11; 46 at 6–11. "A choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). As discussed below, under both Illinois and Indiana law, Smart Products fails to allege that Amwins owed it a duty to report Mr. Blits' claim to StarStone. "Absent a duty, there can be no breach, and therefore, no recovery in negligence." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011); *see also Am. Nat'l Bank & Trust Co. of Chi. V. Nat'l Advertising Co.*, 594 N.E.2d 313, 318 (Ill. 1992) ("Unless a duty is owed, there is no negligence."). Accordingly, Smart Product's negligence claim against Amwins (Count III) is dismissed without prejudice.

I.     Smart Products has failed to state a claim under Illinois law.

Amwins points to *Landmark Am. Ins. Co. v. Deerfield Const. Co.*, 933 F.3d 806, 816 (7th Cir. 2019), a Seventh Circuit case applying Illinois law, that similarly addresses whether "insurance brokers have a duty to deliver notice of claims on

behalf of an insured." 933 F.3d at 816; Dkt. 35, at 4–6. As the Seventh Circuit explains, liability for a broker's actions could attach "only if a broker had a duty to perform the action it allegedly performed negligently." 933 F.3d at 816. Because the insured in *Landmark* "identified no Illinois cases establishing" the duty to inform, the Seventh Circuit affirmed the district court's dismissal of the insured's negligence claim. *Id.*

 As goes *Landmark*, so goes this case. Smart Products neither distinguishes its facts from *Landmark* nor does it identify Illinois caselaw or statutory authority imposing a duty on an insurance broker to deliver notice of claims on behalf of an insured. *See* Dkt. 45. What's more, by failing to substantively respond to Amwins' argument that there is no duty to inform under Illinois law, Smart Products has forfeited arguments to the contrary. *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018).

II.     Smart Products has failed to state a claim under Indiana law.

Smart Products argues that "an insurance broker's duty may be greater than merely procuring insurance if that relationship can be found to exist beyond that of a normal insurance relationship due to the parties' actions or relationship." Dkt. 45, at 9 (citing *United Farm Bureau Mut. Ins. Co. v. Cook*, 463 N.E.2d 522, 529 (Ind. Ct. App. 1984)). Such a determination is based on the insured showing an "intimate and long term relationship between the parties or some other special circumstance." *Id.* (quoting *Billboards 'N' Motion, Inc. v. Saunders-Saunders & Assocs., Inc.*, 879 N.E.2d 1135, 1142 (Ind. Ct. App. 2008)).

Smart Products also draws upon a gratuitous-assumption-of-duty theory, and suggests that "an insurance broker can assume a duty by conduct relied upon by the insured" and notes that "a duty can arise due to the affirmative actions or representations of the non-agent." *Id.* It points out that:

> Indiana courts look for the following elements in such a case: (1) a promise or other conduct indicating an assumption of a duty to undertake the act in question, (2) with knowledge that the other will rely on the promise to act, and either, (3) in a misfeasance case, affirmative conduct by the actor or, (4) in a nonfeasance case, detrimental reliance by the beneficiary or an increased risk of harm because of the failure to act.

*Id.* (quoting *Roe v. Sewell*, 128 F.3d 1098, 1104 (7th Cir. 1997)).

According to Smart Products, "[e]ven if Amwins did not have a duty to provide notice to [StarStone], Smart Products justifiably relied upon the Amwins' decision to provide notice to the primary carrier in April of 2019. Thereafter, Amwins reaffirmed this duty by providing notice to StarStone in March of 2022." *Id.*

Smart Products' arguments are unmeritorious. First, Smart Products' reliance on *United Farm Bureau Mutual Insurance Company* misses the mark. That case focuses on the circumstances in which a broker may have a duty to take further actions in ascertaining if the policy the broker provided adequately covers the insured's needs. *See* 463 N.E.2d at 524–29. In other words, the court only grappled with the contours of negligence as it relates to the procurement of insurance. *See id*. Nowhere does the court suggest that a broker has a duty beyond those associated with the procurement of insurance. *Id.*

Smart Products' reliance on *Billboards 'N' Motion, Inc.*, 879 N.E.2d at 1142, is equally unconvincing. Dkt. 45, at 9. Smart Product's cites *Billboards* to suggest that

7

if there is an "intimate long term relationship between the parties or some other special circumstances," a broker may have a duty "greater than merely procuring insurance." *Id.* But the court in *Billboards* minces no words in explaining that the long-term-relationship analysis is used to determine if broker has a duty "to obtain additional information necessary for coverage" when issuing policies. *Id.* Again, *Billboards* squarely addresses duties as they relate to the procurement of insurance, not whether there are certain facts or circumstances that can impose a duty to report an insured's claim. *Id.*

Lastly, assuming the gratuitous-agent theory applies to brokers, Smart Products would still be required to allege facts showing the following:

> (1) a promise or other conduct indicating an assumption of a duty to undertake the act in question, (2) with knowledge that the other will rely on the promise to act, and either, (3) in a misfeasance case, affirmative conduct by the actor or, (4) in a nonfeasance case, detrimental reliance by the beneficiary or an increased risk of harm because of the failure to act.

*Roe*, 128 F.3d at 1104. Smart Products does not allege that Amwins promised to report the claim. *See* dkt. 18. So, Smart Products must hang its hat on the theory that its conduct indicated "an assumption of a duty" to report the claim, and that Amwins knew Smart Products was relying on its assumption of the duty, in addition to facts relating to misfeasance or nonfeasance. 128 F.3d at 1104. At the very least, Smart Products alleges no facts suggesting that Amwins knew Smart Products was relying on its actions. *See* dkt. 18. Thus, Smart Products still fails to allege that Amwins owed it a duty to report the claim.

8

Accordingly, Smart Products fails to state a claim for negligence under Indiana law. *Schmarr v. World Class Gun Shows Inc.*, 371 F. Supp. 3d 481, 485–86 (S.D. Ind. 2019) (dismissing a negligence action when the defendant did not owe the plaintiff a duty).

## CONCLUSION

For the foregoing reasons, the Court grants Amwins' motion to dismiss [35] and dismisses Count III of Smart Product's third-party complaint without prejudice, with leave to replead by April 17, 2022, if that can be done consistent with Federal Rule of Civil Procedure 11. If no amended pleading is filed by that date, the dismissal will be converted to a dismissal with prejudice.

Date:  March 20, 2023

Honorable Iain D. Johnston
United States District Judge

9